UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAY ALAN MEEKS,

     Petitioner,

v.                                       Case No.  1:15cv252/WTH/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 5).  Respondent moves to dismiss the petition as untimely, providing relevant portions of the state court record (doc. 22).  Petitioner responded in opposition to the motion (doc. 24).  Respondent filed a reply (doc. 29) upon court order (doc. 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further

concludes that the pleadings and attachments before the court show that the amended petition is untimely and should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

On October 20, 2009, petitioner was charged in Alachua County Circuit Court Case Number 09-CF-4074, with four first-degree felonies:  two counts of armed kidnapping (Counts I and II), one count of robbery with a firearm (Count III), and one count of sexual battery using threat of a deadly weapon (Count IV).  (Doc. 22, Ex. C).[1]  On October 22, 2009, the State filed a notice of intent to seek enhanced penalties as "10/20/Life Offender", pursuant to Fla. Stat. § 775.087(2) (2008).[2]  (Ex. D).

On May 27, 2010, petitioner entered a counseled, negotiated plea of no contest to all counts as charged.  (Ex. E).  The plea agreement provided that although petitioner's maximum sentence exposure was life in prison, he would be sentenced to concurrent terms of 25 years in prison on each count (with the first 20 years on

---

[1] All references to exhibits are to those provided at Doc. 22, unless otherwise noted.  When a particular page of an exhibit has more than one page number, the court references the number appearing at the bottom of the page.

[2] The 10–20–Life statute, or section 775.087, Florida Statutes, is implicated when a defendant is convicted of any of the qualifying felonies enumerated in subsection (2) of that section. Fla. Stat. § 775.087(2)(a) (2008).   All of petitioner's crimes were enumerated in subsection (2). Accordingly, all of petitioner's crimes were subject to reclassification from first-degree felonies to life felonies.  Fla. Stat. § 775.087(1)(a) (2008).

Count I to be served as a mandatory minimum) followed by 5 years of sex offender probation.  (*Id*.).  Following a plea hearing (Ex. F), the court accepted petitioner's plea, adjudicated him guilty, and sentenced him in accordance with the terms of the plea agreement.  (Exs. G, H, I).  Judgment was rendered July 15, 2010.  (Ex. H).  Petitioner did not take a direct appeal.  (Doc. 1, p. 2; Doc. 22, Ex. A).

On December 20, 2010, petitioner submitted a document request to the Alachua County Clerk of Court, requesting a copy of various documents in the court file.[3]  (Doc. 22, Ex. K).  By letter dated December 28, 2010, the clerk responded to petitioner's request, provided a copy of the charging information and judgment, and instructed petitioner of the requirements for obtaining copies of the remaining documents.  (Ex. L).

On May 9, 2011, petitioner filed a *pro se* petition for writ of mandamus in the state circuit court, seeking to compel former trial counsel to provide him "records, transcripts, depositions, and reports prepared at public expense" and "all disclosable client records".  (Ex. RR).  The petition was dismissed on June 20, 2011, with leave to amend.  (Ex. SS).  The circuit court advised petitioner that he was not entitled to receive a copy of everything in his file without first compensating his public

---

[3] Petitioner sought a copy of his judgment and sentence, sentencing guideline scoresheet, written plea agreement, charging information, law enforcement arrest reports, crime lab reports, criminal docketing report, plea and sentencing colloquy, notice of sentencing enhancements (and any written findings as to same), and "any other record available."  (Doc. 22, Ex. K).

defender for copying charges; that he was entitled to free copies of transcripts that were prepared at public expense and to the return of personal property being held by counsel, but that petitioner had not identified "the nature and specifics of his request." (Ex. SS). Petitioner filed an amended petition on August 12, 2011, seeking "lab reports, psychological reports, and any and all records relating to and including Petitioner's plea agreement, and any other records created at public expense. . . ." (Ex. TT). In response to a show cause order (Ex. UU), petitioner's former trial counsel filed a notice of compliance on September 20, 2011, stating, in relevant part:

> On August 25, 2011, the entire file (case number 01-2009-CF-4074-A) was copied, without attorney notes, and forwarded to the Petitioner, Jay Meeks at Wakulla Correctional Institution Annex, free of charge.[ ] This Court was cc'd the mailing to demonstrate that the entire file was provided to the Petitioner. . . .

> The Petitioner has received the records, and made additional requests for records that were not generated in case number 01-2009-CF-4074-A. As to those requests, Respondent declines to comply, in that he has no lawful duty to provide documents that were not germane to the Petitioner's criminal case.

(Ex. VV). Petitioner's mandamus petition was dismissed on December 19, 2011. (Ex. WW).

On November 16, 2011, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. M). Petitioner filed amended Rule 3.850 motions on November 22, 2011, and January 3, 2012, each

presenting the same claims as the original, but including appendices in support thereof.  (Exs. N, O).  Petitioner then sought and received extensions of time to amend his January 3, 2012, motion.  (Exs. P-T).  Petitioner filed another *pro se* amended Rule 3.850 motion on December 5, 2012.  (Ex. U).  On August 5, 2014, petitioner filed a motion for leave to supplement and amend that motion, requesting 60 days to do so.  (Ex. V).  The trial court gave petitioner until October 31, 2014, to file an amended Rule 3.850 motion, and later extended the deadline to March 6, 2015, at petitioner's request.  (Exs. W-AA).  Petitioner filed a **counseled** amended Rule 3.850 motion on March 4, 2015.  (Ex. BB).  The state circuit court denied relief without an evidentiary hearing.  (Ex. DD).  The First DCA affirmed, per curiam and without a written opinion.  *Meeks v. State*, 177 So. 3d 254 (Fla. 1st DCA 2015) (Table) (copy at Ex. JJ).  The mandate issued November 19, 2015.  (*Id*.).

On December 17, 2015, petitioner filed a motion to vacate the order denying postconviction relief.  (Ex. MM).  The motion was denied on December 28, 2015. (Ex. NN).  The First DCA per curiam affirmed without a written opinion.  *Meeks v. State*, 192 So. 3d 47 (Fla. 1st DCA 2016) (Table) (copy at Ex. QQ).  The mandate issued June 28, 2016.  (*Id*.).

Petitioner filed his original federal habeas petition on December 16, 2015. (Doc. 1).  Petitioner's amended petition raises two grounds for relief, with sub-

claims:  (1) "Petitioner[']s plea was in violation of the United States Constitution where it was entered involuntarily and unknowingly because he was affirmatively misadvised that an insanity defense could not be presented in his case and was never informed that his speedy trial rights were violated prior to entering his plea" (doc. 5, p. 5); and (2)  "Petitioner received ineffective assistance of counsel in violation of his Sixth Amendment rights where prior counsel failed to file a motion to suppress petitioner[']s illegally obtained confession, failed to seek a discharge for violation of petitioner[']s speedy trial rights and failed to investigate and prepare a viable insanity defense".  (Doc. 5, p. 8).

## DISCUSSION

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. § 2244(d)(2).

Respondent asserts that § 2244(d)(1)(A) governs, and that the petition is untimely because petitioner did not file any tolling motions during the 1-year period between August 16, 2010 (the date his conviction became final) and August 16, 2011 (the date the limitations period expired). (Doc. 22, pp. 4-5). In response, petitioner agrees that § 2244(d)(1)(A) applies (doc. 24, p. 2), but asserts that his petition is not time-barred. Petitioner argues that he is entitled to both statutory tolling (for the period his mandamus petition was pending) and equitable tolling (for an unspecified period during which he "pursued his case file with due diligence but extraordinary circumstances stood in his way where Meeks had to file a mandamus to obtain it."). (Doc. 24, pp. 1-2). Petitioner also appears to invoke § 2244(d)(1)(D), arguing that

the factual predicate of his claims could not have been discovered through the exercise of due diligence until August 25, 2011, when counsel provided him a copy of his case file. (Doc. 24, pp. 2-5).

Applying § 2254(d)(1)(A), the petition is time-barred.  Petitioner did not appeal from his judgment of conviction.  Accordingly, petitioner's judgment became final for purposes of § 2244(d)(1)(A), on August 16, 2010, which is 30 days after rendition of the July 15, 2010 judgment.[4]  *See* Fla.  R. App. P. 9.140(b)(3) (an appeal by a defendant in a criminal case is commenced by filing a notice of appeal "at any time between the rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *see also* Fla. R. App. P. 9.020(h) (defining "rendition" as the filing of the signed, written order); *Gust v. State*, 535 So.2d 642 (Fla. 1st DCA 1988) (holding that if a defendant does not appeal his conviction or sentence, his judgment of conviction becomes final when the 30-day period for filing a direct appeal expires); *see also Gonzalez v. Thaler*, 565 U.S. 134, —, 132 S. Ct. 641, 653-54, 656, 181 L. Ed. 2d 619 (2012) (holding that if a state prisoner does not pursue the highest level of review available to him in the state court system, he is

---

[4] Because the 30th day, August 14, 2010, fell on a Saturday, petitioner had until the following Monday in which to file a timely notice of appeal.  *See* Fla. R. App. P. 9.420(e); Fla. R. Crim. P. 3.040; Fla. R. Jud. Admin. 2.514(a)(1)(C).

not entitled to the additional 90 days for seeking certiorari review in the Supreme Court of the United States).

The limitations period began to run one day later on August 17, 2010, and expired one year later on August 17, 2011, absent tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to calculation of AEDPA's one-year limitations period; thus, the limitations period begins to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run).

Neither petitioner's records request to the state court clerk, nor his mandamus petition seeking records from trial counsel's case file, statutorily tolled the limitations period, because the filings did not challenge directly any specific ruling in petitioner's criminal case and, therefore, are not considered applications for "collateral review" within the meaning of § 2244(d)(2). *See Wall v. Kholi*, 562 U.S. 545, 556 n.4, 131 S. Ct. 1278, 179 L. Ed. 2d 252 (2011) (distinguishing a motion to reduce sentence from "a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review

of a judgment and do not provide a state court with authority to order relief from a judgment."); *see also Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335, 1337 (11th Cir. 2008) (holding that a postconviction motion for DNA testing is not an application for collateral review within the meaning of § 2244(d)(2)); *Washington v. Tucker*, No. 4:11cv414/SPM/CAS, 2012 WL 1964526, at *2 (N.D. Fla. May 11, 2012), *Report and Recommendation adopted*, 2012 WL 1966049 (N.D. Fla. May 31, 2012) (same as to motion to compel state attorney to produce prosecution file (*quoting Williams v. Sec'y, Dep't of Corr.*, 2009 WL 1046131, at *2 (M.D. Fla. Apr. 20, 2009) ("[A] public records request and litigation concerning the same is not a collateral attack and is irrelevant to a time limitation calculation.") *and citing May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) ("The district court correctly determined that the limitations period should not be tolled during the pendency of Mr. May's various motions for transcripts and petitions for writs of mandamus relating to those motions.")).  Petitioner's original Rule 3.850 motion filed on November 16, 2011, did not statutorily toll the limitations period, because it was filed 91 days after the limitations period expired.  *See Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) ("In order for that § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run." (citations omitted)).

Petitioner argues that if his petition is governed by § 2244(d)(1)(A), the court should apply equitable tolling to the period he sought his case file from trial counsel. (Doc. 5, p. 20).  Petitioner explains that he sent counsel two requests for his case file between December 28, 2010, and March 23, 2011 (doc. 5, p. 20), and that counsel did not send him a copy of the file until August 25, 2011, which was after the limitations period expired.  (Doc. 24, pp. 5-6).  Petitioner identifies these documents from the case file as necessary for him to present his ineffective assistance claims: (1) a psychological report of Dr. Levin dated November 17, 2009; (2) an email from the prosecutor to defense counsel dated May 27, 2010, acknowledging that he (the prosecutor) was still waiting for the completion of the FDLE Lab Analyst's report providing the results of DNA testing; and (3) a supplemental discovery exhibit filed by the prosecutor on July 15, 2010, providing the completed FDLE Lab Analyst's report.  (Doc. 24, pp. 1-6 (citing attachments to petitioner's counseled amended Rule 3.850 motion, provided at Doc. 22, Ex. BB)).  Respondent argues that petitioner did not require his case file to ascertain the factual bases of his claims, because the facts were available to him and discoverable with even the slightest diligence within one year of his judgment becoming final.  (Docs. 22, 29).

A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing" of his federal habeas petition.  *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence").   "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner."  *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (*citing Drew v. Dep't of Corr*., 297 F.3d 1278, 1286 (11th Cir. 2002)).  The petitioner must allege more than conclusory allegations, *San Martin*, 633 F.3d at 1268, and must "show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition."  *Id*. at 1267.  Decisions regarding equitable tolling "must be made 'on a case-by-case basis' in light of 'specific circumstances, often hard to predict in advance,' although [courts] 'can and do draw upon decisions made in other similar cases for guidance.'"  *Hutchinson*, 677 F.3d at 1098 (*quoting Holland*, 560 U.S. at 649-650).

Levin Psychological Report

Petitioner claims that the delay in receiving Dr. Levin's psychological report prevented him from timely discovering and presenting these two claims:  (1) counsel

was ineffective for misunderstanding the law and for misadvising petitioner that he "was barred from presenting any defense of insanity due to the fact that he was under the influence of cocaine at the time of the incident"; (doc, 5, Ground One, sub-claim 1 at pp. 5-7, 15); and (2) counsel was ineffective for failing to investigate and prepare an insanity defense based on petitioner's chronic drug use since age 13, petitioner's family history of schizophrenia, a psychological evaluation by Dr. Krop (performed after Dr. Levin's evaluation) reporting that petitioner displayed signs of schizophrenia, petitioner's having been committed to a mental health facility pursuant to the Baker Act shortly before committing the crimes, and petitioner's not having taken his prescribed psychotropic medication at the time of the offenses. (Doc. 5, Ground Two, sub-claim (C) at pp. 14-16).  Petitioner alleges that he could not have asserted his claims without Dr. Levin's report, for this reason:

> Dr. Levin stated that there was no evidence to support an insanity defense, however, Dr. Levin's report only references the incident based on reports from the Gainesville Police Department and does not include any statements from Meeks regarding the incident besides the fact that he was under the influence of cocaine at the time.

> Due to Dr. Levin's report not including any statements from Meeks regarding the incident, Meeks was affirmatively misadvised by prior counsel that an insanity defense could not be presented on his behalf based off of a faulty report and a misunderstanding of law.

(Doc. 24, p. 3) (citations to amended Rule 3.850 motion omitted).  Petitioner has not demonstrated that counsel's failure to provide a copy of the Levin report until August 25, 2011, warrants equitable tolling.

First, the basis of petitioner's claim is counsel's **legal** misunderstanding – his "mistaken belief that Meeks was barred from presenting any defense of insanity due to the fact that he was under the influence of cocaine at the time of the incident." (Doc. 5, p. 15).  Petitioner alleges that counsel "was actually aware of the facts that supported Meeks's insanity defense that were independent of his chronic drug abuse" and that "had . . . counsel conducted minimal research he would have been aware of the fact that the defense in **Cirack** was available to Meeks and was different from a voluntary intoxication defense."   (Doc. 5, p. 7) (emphasis in original). Petitioner's reference to Cirack is to *Cirack v. State*, 201 So. 2d 706 (Fla. 1967), where the Florida Supreme Court stated:   "The law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce a fixed and settled frenzy or insanity either permanent or intermittent." *Id*. at 709 (internal quotations omitted), *superseded by statute on other grounds as stated in Linn v. Fossum*, 946 So. 2d 1032, 1037 (Fla. 2006).  In other words, petitioner's claim is based on counsel's alleged misunderstanding of **the law**, not the facts.  Petitioner fails to establish that without the Levin report, he could not have discovered or

presented his claim concerning counsel's failure to recognize the existence of a *Cirack*-type defense.

Petitioner also has not shown that without the Levin report, he could not have discovered that he had a viable *Cirack*-type defense, or that counsel was aware of facts supporting that defense. All of the facts supporting petitioner's proposed insanity defense were within petitioner's personal knowledge and disclosed by him to defense counsel and to the mental health experts reporting to defense counsel.

Equally damaging to petitioner's argument is the fact that even assuming to his benefit that the November 17, 2009, Levin report was somehow necessary to his discovering the factual basis of his ineffective assistance claims, the record establishes that **petitioner had the opportunity to review that report**, as well as the psychological report of Dr. Krop (dated January 12, 2010), **prior to entry of his no contest plea on May 27, 2010**. Petitioner refused them. During a *Nelson*[5] hearing held April 29, 2010, this exchange took place:

> THE DEFENDANT: What I've been telling him [defense counsel] is I didn't like the outcome of what Dr. Levin had laughing at me. Dr. Levin, the doctor that come talk to me, I thought he was against me, and so I didn't like talking to him, and so I'm trying to tell him [defense counsel] that I need to talk to another doctor and, if not, I want my mother to buy one.

---

[5] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973) (setting forth the procedure in Florida when a defendant requests discharge of court-appointed counsel based on allegations that counsel is not rendering constitutionally effective assistance).

. . . . [Pages 317-321 of transcript not included]

THE COURT:  Now what I've heard from counsel is that he has come into this case pretty recently, considering how serious these charges are. He is not the first attorney who was appointed to this case; they withdrew.  But that he has had conversations with your mom on several occasions, that he has had the two doctors examine you, and he's read the reports from the doctors and he's provided you with copies of the reports.

MR. FLOYD [Defense counsel]:  He did not want copies of the reports, so I did not give him a copy of the reports.  He did not want copies of his discovery, which is voluminous, so I did not give him copies of his discovery.  I saw – and I hate to interrupt –

THE COURT:  That's all right.

MR. FLOYD:  – but I saw the papers go on the floor.  If he doesn't want copies of the papers I handed to him, that's fine.  I can take them back.  I just want to make sure that I'm not keeping anything from him.

THE COURT:  Okay.  One of the things you need to understand, Mr. Meeks, is that your attorney has an obligation to investigate your case, and he has an obligation to inform you of what his investigation reveals.

(Laughter from the Defendant.)

THE COURT:  Okay?  And he does that by having the doctors examine you, getting their reports, looking for mistakes in their reports.  But he's not you, and only you can read the doctors' reports and say whether or not that question was asked and that answer was given.  And if you don't read the doctors' reports, you're not giving your lawyer any way to help you.

You're entitled to discovery.  Discovery will tell you what it is that the State believes happened.

THE DEFENDANT:  I already know what's happened.

THE COURT:  Well, what they think –

THE DEFENDANT:  I know everything.  I know everything.  I'm a prophet.

THE COURT:  Okay.

THE DEFENDANT:  I'm a prophet, and my people will be free.

THE COURT:  Are you then able to work with your attorney?

THE DEFENDANT:  My people will be free.

THE COURT:  Probably.  But do you want this attorney to keep on helping you, and talk to your mom?

THE DEFENDANT:  Yeah.

THE COURT:  Okay.

THE DEFENDANT:  Yeah.

THE COURT:  All right.  So I'm going to note that he does want you to continue.

Now here's a question for you, okay, so we don't get into any problems.  I don't' have a problem with you putting a couple pieces of paper on the floor.  I'd rather you didn't do that, but I don't have a problem with that, okay?

THE DEFENDANT:  I don't – I don't – okay.

THE COURT:  I would ask, if you don't want the papers, you just hand them back to somebody.

THE DEFENDANT:  Okay.

THE COURT:  Okay.

THE DEFENDANT:  All right.

THE COURT:  If you don't want to take them, just simply say, I don't want them; okay?  If they put them down on the table, you can just leave them there.  You don't have to pick them up; okay?

THE DEFENDANT:  Okay.

THE COURT:  Just say, I don't want them.

THE DEFENDANT:  Sorry.

THE COURT:  Your attorney wants to make sure that – because you're entitled to know what he's doing.  You're entitled to know what he's done up to today, and you're entitled to know what he plans to do over the next few weeks.

If you have suggestions, like you've made a suggestion that your mom may be willing to hire a doctor, if you have suggestions, you have the right to share them with your attorney.  He may have the opinion that it's not a good idea.  You ought to know.

. . . .

THE COURT:  . . . So what I normally do is I ask the attorneys, when they visit their clients, to give them copies of the depositions, given them copies of the discovery, so you will know what the different witnesses are saying happened.  I wasn't there.  I can only tell you what people say.

So do you want counsel to give you that information from time to time?

THE DEFENDANT:  What information?

> THE COURT:   Any discovery that he gets from the State.   Any information he has about what the witnesses are going to say that you did.

> THE DEFEDANT:  I don't need information.  I got the lord on my side.

(Doc. 22, Ex. DD, pp. 316, 322-326).  Petitioner's access to Dr. Levin's report was within his control prior to entry of the no contest plea, as was petitioner's decision not to review the report.  In light of the foregoing circumstances, petitioner has not established that his late receipt of a copy of Dr. Levin's report warrants equitable tolling.

Email and FDLE Report

Petitioner also asserts his case file was necessary to ascertain the factual basis of his claim that counsel was ineffective for failing to inform him of, and act on, the State's violation of his speedy trial rights under Florida Rule of Criminal Procedure 3.191.  Petitioner's Ground One, sub-claim 2 asserts that petitioner's plea was involuntary because counsel failed to inform him, prior to entering his plea, that his speedy trial rights had been violated.  (Doc. 5, pp. 7-8).  Petitioner's Ground Two, sub-claim (2)(B) asserts that counsel was ineffective for failing to file a notice of expiration of speedy trial that would have resulted in petitioner's discharge because the State could not have brought him to trial within the recapture window.  (Doc. 5, pp. 11-13; Doc. 24, pp. 3-4).

Florida Rule of Criminal Procedure 3.191 provides, in relevant part:

(a)   Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony.  If trial is not commenced within this time period, the defendant shall be entitled to the appropriate remedy as set forth in subsection (p).  The time period established by this subsection shall commence when the person is taken into custody as defined under subsection (d). . . .

. . . .

(p)  Remedy for Failure to Try Defendant within the Specified Time.

(1)  No remedy shall be granted to any defendant under this rule until the court has made the required inquiry under subdivision (j).

(2)  At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.

(3)  No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days.  A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

Fla. R. Crim. P. 3.191.

Petitioner's claim in Ground One, sub-claim (2) is based simply on petitioner's counting the number of days from when he was arrested on September

30, 2009, until he entered his plea of no contest on May 27, 2010, to determine that counsel failed to inform him, prior to entry of his plea, that the 175-day speedy trial period had expired.  Petitioner did not need access to his case file to research the language of Rule 3.191 and to ascertain the pertinent dates supporting his ineffective assistance claim.  That counsel allowed petitioner's case to proceed and advised petitioner to plead no contest, even though petitioner's speedy trial time had expired, did not depend on petitioner's having copies of the FDLE report and emails.

With regard to Ground Two, sub-claim (2)(B), petitioner asserts that he required "multiple reports from the Florida Department of Law Enforcement (FDLE) and emails concerning them in his case file to establish a *prima facie* basis for concluding that the State could not have brought him to trial within the recapture window."  (Doc. 24, p. 4).  Petitioner explains that the emails and lab report indicate that at the time Florida's 175-day speedy trial clock expired, the State was waiting for a DNA lab result on two items of evidence and thus would not have been able to take the case to trial within the 10-day recapture period following invocation of his right to a speedy trial.  (Doc. 5, pp. 11-13).  Petitioner asserts that this fact, and counsel's awareness of it, was necessary for him to assert a facially sufficient claim of prejudice under *Strickland* and Florida law.  (*Id*., p. 14) (*citing Hammond v. State*, 34 So. 3d 58 (Fla. 4th DCA 2010)).

In *Hammond*, the court held:

> A claim of ineffective assistance of counsel based on a failure to seek discharge because of a violation of the speedy trial rule is extremely tenuous where the State had available the recapture window of Rule 3.191(p)(3). *Cf. Wells v. State*, 881 So.2d 54, 55 (Fla. 4th DCA 2004) (finding that prejudice was sufficiently alleged because the State may not have been entitled to a recapture period). In almost all cases, an allegation of prejudice on this type of claim is speculative. We suspect that it is almost always impossible to reconstruct the circumstances that existed when the speedy trial issue arose (often years earlier), what the State could and could not have done at that time, and "what might have been." Absent peculiar circumstances, such a claim is likely not subject to reasonable proof.
>
> A conclusory allegation of ultimate fact is not enough to establish a basis for the extraordinary relief authorized by *Strickland*. An unelaborated allegation that "the State could not have brought the movant to trial within the recapture window" would be nothing more than bald conjecture. Evidentiary hearings (on an issue not typically subject to reasonable proof) are not required any time a defendant incants these words.
>
> To be entitled to an evidentiary hearing, the movant must allege specific facts that establish a "reasonable probability" of prejudice. In a speedy trial claim, the movant would need to show that the State could not have brought the movant to trial within the recapture time. A conclusory claim is insufficient to warrant an evidentiary hearing. *Oquendo v. State*, 2 So.3d 1001, 1004 (Fla. 4th DCA 2008). Unless the movant alleges a specific factual basis and establishes a prima facie basis for concluding that the State could not have brought the defendant to trial within the recapture window, such a claim should be denied.

34 So. 3d at 60.

The specific factual basis of petitioner's claim that counsel was ineffective for

failing to file the requisite notice and request for discharge is petitioner's allegation

that the recapture window would have expired on April 9, 2010, but the State could not have brought him to trial by that date because it did not have the FDLE lab analyst's report concerning the DNA testing. That report was not completed and filed until July 15, 2010. (Doc. 5, p. 12). As respondent points out, however, (doc. 29, p. 14), petitioner was aware, at sentencing, of the delayed report. At petitioner's sentencing held on July 15, 2010, the State announced:

> MR. BREWER [Prosecutor]: I can tell the Court that we do have DNA in this case and we actually received it yesterday, the final report in this case, which I did call and speak to Mr. Floyd [defense counsel] about and faxed him a copy of that. This is the proposed Sex Predator Order and the Victim Impact Statement. The DNA results, the Final DNA results showed a match for the Defendant's semen being on the left hand of the victim, and a match for the Defendant's DNA being on the firearm in question.

(Doc. 22, Ex. G, p. 8). By his presence at sentencing, petitioner was aware of the facts necessary to state a facially sufficient ineffective assistance claim based on counsel's failure to file a notice of expiration of speedy trial period and motion for discharge.

The foregoing demonstrates that, applying § 2244(d)(1)(A), petitioner's habeas petition is untimely, and petitioner is not entitled to equitable tolling. To the extent petitioner's reply suggests that the same reasons supporting his claim of equitable tolling also support a finding that § 2244(d)(1)(D) applies (doc. 24, p. 5), this argument should be rejected. The dates on which the factual predicates of

petitioner's ineffective assistance claims could have been discovered through the exercise of due diligence all precede the date petitioner's conviction became final under § 2244(d)(1)(A).   Accordingly, the limitations period is governed by § 2244(d)(1)(A) and, under that provision, is untimely.  *See* § 2244(d)(1) ("The limitation period shall run *from the latest of* –").

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 22) be GRANTED.

2.  That the amended petition for writ of habeas corpus (doc. 5), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Jay Alan Meeks*, Alachua County Circuit Court Case No. 09-CF-4074, be DISMISSED WITH PREJUDICE.

3.  That the clerk be directed to close the file.

4.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 6th day of February, 2017.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.